37 F.3d 1505
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 William C. MARSHALL, Petitioner-Appellant,
v.
STATE OF OREGON; Manfred Maass, Superintendent, Oregon
State Penitentiary, Respondents-Appellees.
 No. 93-35542.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 6, 1994.
Decided Oct. 3, 1994.
 
 Before: ALARCON, NORRIS, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 William Marshall appeals the denial by the district court of his petition for a writ of habeas corpus. Marshall was convicted of sodomy in the first degree in the Circuit Court of Washington County, Oregon, and sentenced to 30 years imprisonment. He claims his counsel was constitutionally ineffective. Marshall also claims that the state court sentencing judge deprived him of his right, created by state statute, to have a psychiatric evaluation before being sentenced to an additional 10-year term as a dangerous offender.
 
 
 3
 We have jurisdiction over this timely appeal pursuant to 28 U.S.C. Sec. 2253 (1988). Marshall was not deprived of his right to effective assistance of counsel. However, in sentencing Marshall as a dangerous offender without following statutorily mandated procedures, the state deprived Marshall of his liberty without due process of law. Consequently, we vacate the district court's order denying Marshall's petition and remand with directions.
 
 ANALYSIS
 
 4
 The decision whether to grant or deny a petition for habeas corpus is reviewed de novo. Thomas v. Brewer, 923 F.2d 1361, 1364 (9th Cir.1991).
 
 The Conviction
 
 5
 Marshall attacks his conviction for first degree sodomy asserting that his trial counsel was ineffective.
 
 
 6
 A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 
 
 7
 Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel's performance "is to be evaluated from counsel's perspective at the time of the alleged error." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986). There is a strong presumption that "under the circumstances, the challenged action 'might be considered sound trial strategy.' " Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).
 
 
 8
 Marshall argues that his trial counsel was deficient by failing to call three key defense witnesses who would have testified that Marshall could not have committed the acts of which he was accused at the time the victim alleged they occurred. Marshall's trial counsel investigated the possibility of calling these three witnesses. Counsel stated that one of them, Steven Connelly, told counsel that he "would not cooperate, indicated he had no recollection and did not want to appear and testify." Connelly also relayed to counsel that his girlfriend, Karen Cook, another of the witnesses, did not want to testify either. The last of the three witnesses, Rowley Shearer, Jr., had been indicted for sexually abusing the same victim in a separate case. Counsel learned that Shearer would invoke the Fifth Amendment and refuse to testify if called.
 
 
 9
 Counsel had a reasonable belief that calling these witnesses would not be fruitful. The state post-conviction court found that counsel "adequately investigated the case, investigated witnesses and subpoenaed material witnesses...." "In reviewing the district court's decision, the state court's factual conclusions are entitled to a presumption of correctness under 28 U.S.C. Sec. 2254(d)." Pedro v. Oregon Parole Bd., 825 F.2d 1396, 1398 (9th Cir.1987), cert. denied, 484 U.S. 1017 (1988). Marshall's counsel's actions were not deficient. We do not reach the issue whether the alleged deficiency of counsel affected the result of the trial.
 
 The Sentence[1]
 
 10
 Marshall argues that he was deprived of a right, created by state statute, to have a psychiatric evaluation before being sentenced to an additional term as a dangerous offender.[2] "[T]he failure of a state to abide by its own statutory commands may implicate a liberty interest protected by the Fourteenth Amendment against arbitrary deprivation by a state." Fetterly v. Paskett, 997 F.2d 1295, 1300 (9th Cir.1993). "Misapplication of these laws that lead to deprivations of those liberty interests by state institutions may be reviewed in federal habeas corpus proceedings." Ballard v. Estelle, 937 F.2d 453, 456 (9th Cir.1991). "When a state uses mandatory language in its enactment of a statutory measure, the state creates a protected liberty interest." Hewitt v. Helms, 459 U.S. 460, 471-72 (1983).
 
 
 11
 We now consider whether the Oregon statutory scheme created a protected liberty interest. Marshall was convicted of sodomy in the first degree which, under Oregon law, is a Class A felony. Or.Rev.Stat. Sec. 163.405(2) (1993). The maximum term for an indeterminate sentence for a Class A felony is 20 years. Or.Rev.Stat. Sec. 161.605(1) (1993). This maximum term can be increased to 30 years under Oregon's dangerous offender statute under certain circumstances. Or.Rev.Stat. Sec. 161.725(1) (1993). The sentencing court must find that "because of the dangerousness of the defendant an extended period of confined correctional treatment or custody is required for the protection of the public." Id. In the case of a defendant who is sentenced as a Class A felon, the sentencing court must also find that "the defendant is suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another." Id. at (1)(a). This second finding must be made "as provided in ORS 161.735." Or.Rev.Stat. Sec. 161.735 sets forth a step-by-step procedure for determining whether the defendant is dangerous. Or.Rev.Stat. Sec. 161.735 (1993). Subsection 1 provides:
 
 
 12
 Upon motion of the district attorney, and if, in the opinion of the court, there is reason to believe that the defendant falls within ORS 161.725, the court shall order a presentence investigation and an examination by a psychiatrist or psychologist. Id. at (1) (emphasis added).
 
 
 13
 This examination "shall be completed within 30 days, subject to additional extensions not exceeding 30 days." Id. at (3) (emphasis added). The examining psychiatrist or psychologist shall file with the court a written report including an evaluation of whether the defendant is suffering from a "severe personality disorder indicating a propensity toward criminal activity." Id. Upon receipt of the examination report the court "shall set a time for a presentence hearing." Id. at (5) (emphasis added). At the hearing the district attorney and the defendant may question the examining psychiatrist or psychologist. Id. "If, after considering the presentence report, the examination reports and the evidence in the case or on the presentence hearing, the court finds that the defendant comes within ORS 161.725, the court may sentence the defendant as a dangerous offender." Id. at (6). Each step of the state procedure for determining whether the defendant is dangerous contains the mandatory "shall." As a consequence, the defendant had a right to the psychiatric evaluation and subsequent procedures before being sentenced to an additional 10-year term as a dangerous offender. This court finds that the Oregon statute creates a protected liberty interest.
 
 
 14
 Marshall did not have a psychiatric examination and, as a consequence, the statutory procedure was not followed. The state trial court did appoint a psychiatrist to examine Marshall. However, when the psychiatrist went to examine Marshall, Marshall declined to undergo an evaluation until he had a chance to talk with his attorney. Marshall's attorney was out of the country at the time. The psychiatrist made no further attempts to examine Marshall.
 
 
 15
 The state argues that Marshall waived his right to the procedures set forth in Or.Rev.Stat. Sec. 161.735 when he declined to be examined without first consulting with his attorney. Under Oregon law, if a defendant refuses to be examined, he may be sentenced as a dangerous offender without a psychiatric evaluation. State v. Brown, 82 Or.App. 256, 258, 728 P.2d 534 (1986). However, before a defendant is psychiatrically examined, he is entitled to consult his attorney. Powell v. Texas, 492 U.S. 680, 686 (1989) (per curiam); Satterwhite v. Texas, 486 U.S. 249, 254 (1988); Estelle v. Smith, 451 U.S. 454, 470-71 (1981). We therefore hold that Marshall's refusal to be interviewed by the psychiatrist until he could confer with his attorney did not waive his right to the examination.
 
 
 16
 The state also argues that Marshall waived his right to a psychiatric evaluation when he failed to assert the state's failure to comply with the dangerous offender statute at the sentencing hearing. A waiver of constitutional rights must be voluntary and knowing. Godinez v. Moran, 113 S.Ct. 2680, 2687 (1993). We must "indulge in every reasonable presumption against waiver" of constitutional rights. Evans v. Raines, 800 F.2d 884, 885 (9th Cir.1986) (quoting Westbrook v. Arizona, 384 U.S. 150 (1966) (per curiam)). This court will not infer from Marshall's silence at the sentencing hearing a voluntary and knowing waiver of his right to have the state follow mandated procedures before sentencing him as a dangerous offender. See United States v. Lopez-Vasquez, 1 F.3d 751, 755 (9th Cir.1993) (mass silent waiver impermissibly presumes acquiescence in the loss of the right to appeal). His sentence to an additional 10-year term as a dangerous offender, made without following the statutory procedures, violated a liberty interest protected by the United States Constitution.
 
 
 17
 The district court's order denying Marshall's petition for habeas corpus is vacated. We remand to the district court with directions to enter an order stating that the writ shall issue unless Marshall's August 16, 1988 sentence in the Circuit Court of the State of Oregon for the County of Washington is vacated and he is resentenced within a reasonable time to be set by the district court.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Marshall states that he is also attacking his conviction based on the alleged violation of his right to due process. He does not state how the sentencing judge's failure to follow sentencing procedures is a ground on which to reverse his conviction. We review only his sentence in this section
 
 
 [2]
 For the first time on appeal, the state argues that Marshall procedurally defaulted on his state court remedies in his direct appeal, by failing to argue in state court that the state violated his due process rights. If a petitioner failed to raise an issue at all, he procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991). However, we choose to consider the merits of Marshall's appeal because the state waived the issue of procedural default by failing to raise it below. See, e.g., Francis v. Rison, 894 F.2d 353, 355 (9th Cir.1990); Grooms v. Keeney, 826 F.2d 883, 885 (9th Cir.1987)